DEROY DANIELSON, *Appellee,* v. LINCOLN R. SCOTT, *Appellant.*

No. 17,962.

SYLLABUS BY THE COURT.

1. CONTRACT—*Promise to Pay Firm Debts—Right of Individual Partner to Benefit.* The purchaser of a stock of merchandise from a partnership agreed to pay certain notes and an account owed by the firm as part of the price. Afterwards he procured the notes to be indorsed and the account to be assigned to him. In further payment of the price he gave to one of the partners, who owned all the property of the firm, his note. When sued by the payee upon this note the purchaser counterclaimed upon the firm notes and account which had been transferred to him. *Held,* the individual partner was entitled to the benefit of the purchaser's promise to the firm to pay the firm indebtedness upon which the counterclaim was based.

2. PLEADINGS—*Defects Not Prejudicial.* Certain defects in the

pleadings and proceedings considered and held to be without prejudice to the substantial rights of the complaining party.

Appeal from Cheyenne district court. Opinion filed February 8, 1913. Affirmed.

*R. H. Gilmore*, of Denver, Colo., and *E. E. Kite*, of St. Francis, for the appellant.

*J. L. Finley*, of St. Francis, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The firm of Whisnant & Danielson was engaged in the retail hardware and implement business at Idalia, Colo. Danielson owned all the property and Whisnant managed the business for a share of the profits. The firm sold out to Scott. In part payment of the price Scott turned over to Danielson two promissory notes held by Scott, aggregating $1400. Afterwards Scott took up these notes and substituted for them his own note for $1400. When it fell due he failed to pay and Danielson sued him. When Whisnant and Danielson sold out they were indebted to the Moline Plow Company on three promissory notes for $339 each, and to the International Harvester Company of America on an account for $454. As part of the consideration for the Whisnant & Danielson sale to him, Scott agreed to satisfy this indebtedness, and afterwards did so. The notes, however, were indorsed, and the account was assigned to Scott, and he set them up as a defense to Danielson's cause of action. The cause was referred to a referee for trial. An extended hearing followed in which all the dealings and relations of the parties were thoroughly investigated, including a number of collateral matters. As a result the referee made the following findings of fact:

"From the testimony introduced I find:

"First: That on the twenty-second day of May, nineteen hundred and nine, at the time of the commencement of this action, the plaintiff was the owner

and holder of the note set out in the petition as Exhibit A, and that there was due thereon to the plaintiff from the defendant the sum of fourteen hundred dollars, with interest at the rate of ten per cent per annum from May tenth, nineteen hundred and eight.

"Second: I find that the notes and account set out in the answer of the defendant as offsets against the notes sued by the plaintiff were never in fact owned by the defendant or purchased by him, but at the time the same were taken up by him, as claimed, they were thereby paid and discharged by the defendant, pursuant to a valid existing agreement of the defendant to pay and procure a discharge of liability on the part of the plaintiff on all of the items so pleaded as setoffs.

"Third: That on January seventh, nineteen hundred and eight, the plaintiff and Chas. Whisnant sold and delivered to the defendant a certain stock of merchandise, goods, notes and accounts, and as a part payment of the purchase price thereof the said defendant agreed to pay the said notes and accounts pleaded as setoffs in the manner and the form which he afterwards did pay the same.

"Fourth: That the plaintiff ought to have and recover judgment against the defendant for the sum of fourteen hundred dollars, with interest thereon at the rate of ten per cent per annum from the tenth day of May, nineteen hundred and eight, and the costs of this action."

These findings were approved by the district court and judgment was rendered accordingly.  Scott appeals.

The reply undertook to deny the purchase of the notes and of the account by the defendant and the indorsement of the notes and the assignment of the account to him.  The denial, however, was in the copulative form and consequently was pregnant with one or more admissions.  The subject was presented to the referee who ruled against the defendant and held the denial to be sufficient to raise all the issues contemplated by the plaintiff.  It is strenuously insisted that the judgment should be reversed because of this ruling.

A very learned brief and a very logical and dis-

criminating oral argument submitted on behalf of the defendant make it clear that the plaintiff was guilty of a breach of good form in introducing such a reply to the files. Since, however, the referee compelled the parties to resort to their proof exactly as if the reply were of good character, and since all phases of the rights and liabilities of the litigants have been investigated and determined as if upon issues properly framed, the court is constrained to give some consideration to the merits of the controversy. When the defendant remitted the money due them to the plow company and to the harvester company he was merely carrying out his agreement to pay the notes and account and thereby pay for the property which he received from the plaintiff. Consequently, in his hands the notes and account were discharged obligations of Whisnant & Danielson, and of Danielson as a member of that firm. Whether or not the forms of the pleadings were such as to define with accuracy the matters upon which proof was necessary is no longer of consequence. Full proof has been made and the court is obliged to ignore defects in the pleadings which do not affect the substantial rights of the adverse party. (Civ. Code, § 134.)

The reply spoke in the name of Whisnant & Danielson, a partnership. As already indicated the proof was that Danielson owned all the property and effects of the firm which were sold and delivered to the defendant. It is confidently asserted that there is a fatal variance between the pleadings and the proof. Here again the court is prevented from recognizing technicalities in opposition to substance and justice. The statute reads as follows:

"No variance between the allegations, in a pleading, and the proof is to be deemed material, unless it have actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the

court, and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended, upon such terms as may be just." (Civ. Code, § 134.)

The defendant did not invoke this statute or comply with it. The record shows clearly enough that the defendant was neither misled nor prejudiced, and a formal amendment of the reply must be. regarded as waived, if indeed, the whole case considered, the reply needed amendment.

The certainty and sufficiency of the reply are challenged in some other particulars, but the defects pointed out are of less gravity than those which have already been considered. Probably the most effective way of reaching such defects would have been by motion made before the cause was referred.

It is asserted that the second finding of the referee is not supported by the evidence and that, as a consequence, the plaintiff must fail because he can not set up the defendant's contract with the partnership to pay the partnership debts as a defense to the plaintiff's individual liability on, those obligations. Neither proposition is sound. It is not necessary to recite the evidence warranting the inference that the defendant paid the debts of the partnership, as he agreed to do, and did not buy them. But conceding the fact to be that he did buy them, the plaintiff is entitled to the benefit of the defendant's promise to pay them. The general rule is that one of two joint contractors can not alone enforce a joint contract against the party with whom they contracted, but the rule has no application to the facts of this case. By statute the liability of the firm, Whisnant & Danielson, to the plow company and to the harvester company was also the several liability of each partner. (Gen. Stat. 1909, § 1641.) The promise of Scott to discharge this liability was a promise made for the benefit of each partner who might be called upon to pay. The plaintiff was a privy

to the consideration for the promise, in fact, furnished it, and he has a clear, individual, legal right to its performance by the defendant. In the case of *McKinnon v. Palen,* 62 Minn. 188, 64 N. W. 387, a partner secured a partnership debt by a mortgage upon his individual property. In an action to foreclose the mortgage he sought to avail himself of items of damage accuring to the partnership, to reduce the debt secured by the mortgage. The court said:

"Plaintiff contends that because none of these items of damages accrue to defendant in his individual right, but all of them accrue to him and Wichterman in their joint or partnership right, therefore defendant can not recoup them in this action. which is against him alone. The contention is not well founded. While this action is against defendant alone, it is for a partnership debt, and he has a right to avail himself of any defense of which the partners would have a right to avail themselves if the suit were against both of them." (p. 192.)

This rule is founded upon common justice (*Seaman v. Slater* 49 Fed. 37, 40), and prevents a multiplicity of actions to reach the same ultimate result.

The judgment of the district court is affirmed.